In its application for rehearing, defendant-appellant complains that we have committed errors in our finding of facts and of law.
The defendant-appellant contends that we have committed errors of fact, as follows, which contentions we answer as follows:
(1) That "in July, 1944, plaintiff, although classified for regular duty, did not perform them, nor was he capable of doing so. In this respect we contend that the evidence, particularly that of George Allan, Electrical Foreman, and Dr. Dimon's letter of September 15, 1944, show that from July 11, 1944, until his termination, plaintiff performed work of a regular nature whenever called upon and without complaint, and that he admitted to his own physician that when he was returned to work he was at first doing light work, and then gradually assuming his usual occupation as electrician".
Our answer to this complaint is: It is true that George Allan, electrical foreman, testifies (pp. 65 to 68) that plaintiff performed regular duty from July 11, 1944, to Sept. 8, 1944; but an analysis of his testimony will show that plaintiff was returning to regular duty because he complained about not getting overtime payment, and that, as a matter of fact, though he performed some tasks in the nature of his regular duties as electrician, for the most part he continued performing light duties.
It is also true that Dr. Simon wrote to Dr. Allen under date of September 15, 1944, that plaintiff was pronounced cured by him on August 11, 1943, and that on subsequent examination admitted that he had thereafter gradually returned to his regular work, and in Dr. Simon's opinion he was capable of performing his former duties.
Dr. Allen testified that on July 11, 1944, plaintiff came to him at the suggestion of his foreman and informed him that he desired to return to his regular work, and that he, Dr. Allen, thereupon gave him a note to his foreman assigning him to regular work. It is apparent that this note was given mainly on the insistence of plaintiff and partly on letters written by Dr. Simon.
(2) That prior to his release plaintiff was examined by Dr. Simon again at the request of the company.
Our answer to this complaint is that there is no clear showing as to whether the last examination of plaintiff was at the request of the company or plaintiff himself, but the fact remains that he was examined at the company's expense, and it seems immaterial to us as to who requested the examination.
(3) That the court is in error in finding as a fact that Dr. Echols found the objective symptoms of atrophy of the right calf of leg and diminution of the Achilles reflex on the right side, and in *Page 402 
giving too much weight to the testimony of Dr. Echols.
A review of the deposition of Dr. Echols shows that counsel for defendant is correct in saying that Dr. Echols did not positively find objective symptoms of atrophy of the right calf of leg and diminution of the Achilles reflex on the right side; the finding of slight atrophy of the right calf, and slight diminution in the Achilles reflex on the right side was found by Dr. Simon on his examination of September 15, 1944, as shown on page 6 of his deposition. In so far as the testimony of Dr. Echols is concerned, the fact remains that from his examination of plaintiff and from objective, as well as subjective symptoms, he came to the unqualified conclusion that plaintiff was suffering from a classical ruptured intervertebral disc, and that the only remedy therefor which could give any permanent relief would be an operation. In his testimony, Dr. Echols admits that he made no extensive notes, but he is completely satisfied that his diagnosis is correct. He further admits that plaintiff informed him that he could do work of a slightly laborious character, and that in those cases of ruptured intervertebral discs, the condition varied from time to time, so that at times no pain was felt, except under severe strain, but that, as stated before, no permanent relief could be had except by removing the condition.
(4) That the court erred in finding that Dr. Simon agreed that the diagnosis of Dr. Echols and Dr. McHugh could have been correct.
On page 13 of Dr. Simon's deposition we find the following questions and answers:
"Q. I get the impression from your first report of February 22, 1943, that you felt the man had suffered a rather severe injury. Is that right? A. I felt that he had suffered an injury in which he felt a definite snap or popping sensation in the lower back.
"Q. There was also at that time marked objective evidence of injury in muscle spasms and such? A. That is right.
"Q. That is the kind of injury that could cause a ruptured disc? Is that right? A. Yes, it could.
"Q. In a report that you gave, which was in August, 1943, which is the one just before the last report, you stated in there that while you felt that his condition was all right, you said that he did show some evidence of paraesthesia along the lateral side of his foot. Do you relate that in any way to his injury? A. That is a part of the sciatic syndrome.
"Q. That is also evidence of a sciatic syndrome, is it not? A. Yes.
"Q. That is also in some instances an objective symptom of a ruptured disc? A. That is true.
(5) That the court erred in finding that plaintiff, according to his own testimony, suffered much excruciating pain from his back, to the extent even that the only time he has any reasonable comfort is when he sits in a straight chair with a hard bottom.
Our conclusion came from the following testimony of plaintiff on page 21 of the transcript of testimony, as follows:
"Q. How does the condition of your back now compare to the time that you were working for the Standard Oil Company at the time you left there? A. Not much difference. The pain comes and goes, but I do find that the pain that will enter into the leg is more active and becomes more active periodically than it did several months back,' and I find that is due to if I walk too much or if I stay on my feet too much, or if I ride too much, or if I sit in a very soft chair, such as an overstuffed chair. The chair proposition I just eliminated completely, because it is no use sitting when you are not comfortable. The chair I use at home is a chair of this nature (indicating), with a hard seat and hard back. There I get as much comfort as I know of."
After a careful review of the record and the facts, we again state that we are of the firm opinion that plaintiff is suffering from a ruptured intervertebral disc, from which it naturally follows that he is disabled from performing work of any reasonable character.
As to the complaint of defendant-appellant that we committed an error of law in not allowing the defendant-appellant *Page 403 
full credit for the wages paid him against his compensation, we feel that our decree is correct.
Application for rehearing refused.